The remaining case is No. 05-3192, Wright v. Merit Systems Protection Board. Has Mr. Stewart arrived? Mr. Gallagher, would you come forward, please? Is Mr. Stewart in the room? Please. Mr. Stewart, please proceed when you're ready. Yes, Ian Stewart appearing on behalf of the appellant, Lewis Wright. This involves a dismissal for failure to assert jurisdictional grounds before USARA. I think, in reading the judge's testimony, he was persuaded by opposing counsel that what was at stake here in this matter was the fact that this man had a disability unrelated to his work, and that's why he was being discriminated against. Certainly that was a factor, but this gentleman was being denied access to job bidding and overtime. Finally, after quite a few months of that, he went into retirement because he couldn't continue under those circumstances. I think it's not one where, because he had the service-related disability from his military time, they were discriminating him against that alone. That was part of the motivation because, from the very beginning, he was given a 10-point advantage to get the job. He had to get counsel at that time to get admitted into the post office for the job he had, and the problems continued. Factually, he was abused. He was called a psycho vet by his supervisor, both verbally and in reports written to the OWP. He was victimized by these things on a daily basis. Admittedly, he did have, or they didn't accommodate him for his service-connected disability. I didn't find an accommodation for him, but that was just part of it, and certainly it's part of the overall picture. I think the judge just glanced over that. He didn't really consider the factors that were in the record relating to Mr. Wright's problems that he was having or had had at work while he was still working. I think, clearly, there should have been an opportunity for him to have a hearing on the merits where the denials advanced by the respondents were subject to cross-examination. When they took the record down and they just disregarded what he said as not being proved, well, I think we were able to do that. Mr. Gould, what about in the AJ's decision, I'm looking here I guess at A-60, A-6-0 of the joint attendance. He says that, the agency is moved to dismiss the appeal for lack of jurisdiction. I held a conference call with the parties on March 23rd, 2004 to discuss the issue of jurisdiction, and then he said, and this is the key sentence, please. During the conference, the appellant stated that his claim was that he was forced to retire due to discrimination based on his service-connected disability. Now is that, are you saying that's incorrect? I didn't pick that up when I got this thing, and that's an overstatement. That's not why he was forced to retire because of his service-based disability. Well, no, but I'm saying is, is, is what the, I mean the AJ is saying here that Mr. Wright stated that he was claiming that he was forced to retire due to discrimination based on service-connected disability. In other words, the AJ is saying, here's what Mr. Wright is contending. Are you saying the AJ is wrong in characterizing Mr. Wright's contention? Yes, I am. That's not the reason he retired. It was one of the reasons he retired, but the reason he retired is because of the problems he was having at work with this particular supervisor. No, but what is there in the record to show that, I mean, the AJ is saying they had a conference, and this is what Mr. Wright said. Are you saying Mr. Wright didn't say what the AJ says here? Yeah, I am saying that, Your Honor. And what, do you have any basis for that? Well, I mean, I understand the argument you're making, but you do have this statement here where the AJ says, here's what Mr. Wright says was his contention. Now, you're saying, no, no, that's not, that's not correct. But what do you point to to support your claim that the AJ got it wrong when he characterized Mr. Wright's position? Well, on A12, there's the addendum that went along with the original filing, which, quote, how workplace harassment and mistreatment has caused severe emotional harm and resulted in a constructive dismissal. That was certainly asserted. Right, and that seems to be consistent with what Mr., what the AJ is saying Mr. Wright said at page A60, where he says he said that it was due to discrimination, which is referenced at A12, based on his disability. And that's the only thing that's a problem, a little bit, I think, from the standpoint of your case, because you have the AJ saying, here's what Mr. Wright says is his argument. Yeah, I agree that's a problem, Your Honor, but I can only tell you that I didn't hear him say that. And it was my mistake in not picking that. In other words, I had an opportunity to write and correct that colloquy that the judge put into effect. And I missed that. I didn't do that, and I should have done. But he never said that. Did you file a response to the judge's request? Is there any response file? Well, there's a couple of documents in here dealing with jurisdiction, but no to answer your question. Because the AJ specifically says on page A60, I directed the opponent to file a response to the agency's motion to be received by April 1. You filed no response. No, I did not file a response, but there was responses in there already in the initial filing, and then the subsequent addendum that I was just reading from here, which seemed to cope or deal with that problem. But apparently not. You're saying you relied on the original submissions that had already been filed. That's correct. That's what I did. So, there is the problem that the court mentioned with the judge's observation about what my client allegedly said. I think the judge was mistaken. He didn't say that. His constructive dismissal was as a result of the harassment he was receiving, starting from the beginning when he came on board with the preference as being a veteran. And it seemed to, according to my client, seem to have got under the supervisor's skin that that had taken place. And he really gave him a tough time. So tough that in the end he just quit. Okay, we'll save the rest of your time for rebuttal, Mr. Stewart. Mr. Bell, may it please the court, this case has to be viewed by what was before the administrative judge. And the story that counsel just shared was not a story that was shared with the administrative judge. The appeal that was received was an appeal form that the USARA box checked off. Attached to the appeal form were two decisions dealing with Mr. Wright's worker compensation claims. Those claims did not mention, those decisions did not mention anything about discrimination based on military service. Now, faced with an appeal that is vague and uncertain, the administrative judge had a two-fold task. First, to figure out what Mr. Wright's claim was. And second, to determine if the board had jurisdiction over Mr. Wright's claim. So the administrative judge, in his acknowledgment order, ordered Mr. Wright to file evidence and argument relating to how the board had jurisdiction over his claim and what the claim was about. In response, Mr. Wright submitted a one-sentence statement saying that this was a USARA claim. Well, the administrative judge then held a conference call to try to clarify exactly what it was that Mr. Wright was alleging that would fall within USARA. And so, in the record, we have the summary of the conference call. And in that summary, the administrative judge clearly directs Mr. Wright to, well first, the administrative judge sets out the criteria necessary for asserting a USARA claim. And then directs Mr. Wright to respond to that criteria and to respond to a pending motion to dismiss that the Postal Service had filed. And in that motion, the Postal Service had also set out the criteria for USARA and had asserted that Mr. Wright had failed to mention anything about discrimination based on his military service. Mr. Wright did not respond to the administrative judge's order. What about the statement, the psycho-fetch statement? That was not... Is that a reference back to his military service? It would be, but that statement was not made to the administrative judge, for the administrative judge. That was raised for the first time on administrative petition for review before the board. And was never made to the administrative judge. It was made for the first time in the petition for review and then repeated here today. Also, today is the first time that Mr. Wright or his counsel have disputed the summary of the conference call that the administrative judge held. So, I mean... Well, there were two calls. Excuse me. If the board then misread the statement about the psycho-fetch, not allowing it to send it back at least to have the preliminary hearing on jurisdiction, just based on that, would we reverse it and let the board reconsider the psycho-fetch statement? Because it was raised before the board. It was raised before the board, but not the administrative judge. Not before the adjudicator. Right. You're saying you still lose your... Couldn't that be any new evidence that would be submitted to the board for reconsideration? Well, it wasn't new evidence. It was... I mean, he was saying that this happened back before 1997, that this statement by a supervisor, the name-calling occurred before 1997. So, this wasn't new evidence or a new allegation or a new issue. I mean, this was something that was readily available that could have been alleged before the administrative judge. And this case has to be viewed by what was in front of the administrative judge. And that was not... That statement was never made in the proceedings before the administrative judge. And the administrative judge gave Mr. Wright ample opportunities to expand on his allegations, from the acknowledgement order, ordering him to respond on the issue of jurisdiction, to the actual conference call where there was an opportunity to discuss the jurisdictional issues. And then, finally, ordering him, in the summary of the conference call, to respond to a pending motion to dismiss for lack of jurisdiction. And so, the opportunities were there before the administrative judge. And there's no reason, you know, why this would be asserted the first time before the full board. And under the board's procedures, unless it's the newer material evidence that's discovered and that was not readily available despite due diligence on the part of the appellant, then it's not, you know, you're not permitted to raise a new claim at that point. Well, that was material evidence. Would that be sufficient to establish jurisdiction? Well, it might be material, but it's not new. Oh, would... If he had asserted that before the administrative judge? If he had asserted... Well, it wouldn't be... It would be a much closer case if he had made those allegations before the administrative judge. The board has... At least for jurisdictional purposes. For jurisdictional purposes. It would be much closer because the board has recognized usuric claims based on harassment, pervasive harassment, which affects a person's working conditions. And so, if those allegations had been made before the administrative judge, you know, given the broad construction of allegations under usuric, that may have been enough. But those allegations were not made before the administrative judge. Well, so shouldn't the full board have filled that gap? I mean, they're not an appellate body from the administrative judge. The administrative judge is a fact-finding arm of the board. If, in fact, it would have turned the tide, I guess I haven't really thought through whether on this record it might have turned the tide. But then, wasn't there an obligation on the board to give the administrative judge the opportunity to consider the evidence? The board has practice and procedures, and those procedures are in the regulations. And... You know, so they encourage bringing the full case before the A.J. I agree. But I don't know if they have a procedure which says we, the board, are a fancy appellate body and we're not going to permit new evidence. In fact, I think the board's boilerplate says that if there's new evidence, they may be more likely to take something up rather than otherwise. Right, if there was new evidence. There was no new evidence before the full board. And the board does... Let's just assume this is new evidence. Okay. But we know accepting wasn't before the A.J., so it was new. You might say it's not evidence or it wouldn't have changed during the time, but I think I heard you say I'm not holding you to any concession. I think we're all concerned that this does relate specifically to the military status. To the psycho bitch. Oh, right. You're saying... Your position, I guess, Mr. Garger, is that this was new evidence in the sense that it was presented for the first time, but it wasn't newly discovered evidence. Right, exactly. In that it wasn't unavailable before. Right, exactly. It was not previously unavailable before the close of the record. I mean, prior to the close of the record. And so, I mean, I guess in terms of what procedures the board has as an appellate body, it does have authority to reopen, and in reopening, in making that decision, it has to weigh finality versus the finding the correct result. But here, I mean, based on what was before the administrative judge, the administrative judge reached a correct result. What was before the administrative judge was that this was a disability claim. And under USERRA, the board doesn't have jurisdiction over a pure disability claim. It has to be as part of the motive. The motive has to be to discriminate based on military service. And that allegation was not made before the close of the record in this case. So, because the petitioner did not make non-fruitless allegations that he suffered discrimination based on his prior military service, the board properly dismissed the appeal for lack of jurisdiction. Unless there's any other questions. No questions. Thank you, Mr. Chairman. Thank you, Your Honor. Mr. Seward, you have some rebuttal time. I think counsel is missing the direction, because when the application or the notice was filed with USERRA or with the board in connection with that, the addendum that was attached to that filing set forth, and that's at A20, that's right, at A12, set forth the claims of discrimination. It doesn't say it was because of a disability. The disability papers that were attached were the papers that were filed were so the record was complete, so that the other side could see what was in fact incurred or had incurred. It doesn't say discrimination by virtue of being a veteran or military service, just says he was discriminated against. Yeah. Is that right? At A12. The addendum I'm talking about is at A12, and I'm reading from about the third line down, where it starts, however, workplace harassment and mistreatment cause severe emotional harm and result in a constructive dismissal. I don't say post office in that group of words, but the preamble to what was going on, it's obviously a claim against the post office for the work-related harassment that led him to quit. He quit, of course, but we characterize that as a constructive dismissal, because conditions for him at the time were so unbearable. He just couldn't go on with it. That's why he quit. And I think that this addendum was filed with the paperwork. So the judge, the administrative law judge, I had this paperwork. I'm not sure we discussed it any further than it was filed, but he certainly had the paperwork. If he didn't consider it, which I don't think he did, then the decision was not favorable. He construed it that what was before the panel was going to be the fact that he was disabled. He had a disablement which was rejected by the post office. That wasn't what this was about. And I don't think it could be construed. If you look at this and give it its liberal construction, then I don't think it can be construed that way. I think clearly he was complaining about his problems at work. They didn't provide him any accommodation for his injury or reassessment or give him a job that he could take that in consideration. But that's not the injury itself. And that's not what this is about. This is about the conditions of his place of employment that led to his demise. Those are Mrs. questions. I don't know. Any more questions for Mr. Stewart? Thank you, Mr. Stewart. Thank you, ma'am. And thank you, Mr. Fowler. The case is taken in.